UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 15 C 2661 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| VILLAGE OF GRAYSLAKE, et al., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Andre Jackson ("Plaintiff") brings this civil rights action under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 against the Village of Grayslake, Illinois, several of its police officers, and Diane Donohoo, an assistant district attorney located in Walworth County, Wisconsin ("ADA Donohoo") (collectively, "Defendants"), alleging false arrest, unlawful search, malicious prosecution, conspiracy, and other claims. (R. 20, Second Am. Compl.) ADA Donohoo moves to dismiss the claims raised against her pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (R. 29, Mot.) For the reasons stated below, the motion to dismiss is granted.

## BACKGROUND

Plaintiff alleges that on March 27, 2013, he was "engaged in a conversation with his landlord . . . in the area immediately proximate to his residence" in Grayslake, Illinois. (R. 20, Second Am. Compl. ¶ 11.) He claims that even though he "was not engaged in the performance of a criminal act, nor had he been in performance of a criminal act," he was confronted by Grayslake Police Officers David McNamara and Jeff Myhra shortly after the conversation with his landlord. (Id. ¶¶ 11-12.) Plaintiff alleges that Officer McNamara had "his gun drawn, pointed at [Plaintiff] and told [him] to raise his hands and then handcuffed [him] and immediately

thereafter aggressively searched [his] person and pockets and confiscated [his] money." (*Id.* ¶ 12.) Plaintiff claims that Officer Myhra was present and witnessed Officer McNamara's actions but made no attempt to stop him. (*Id.* ¶ 13.)

Shortly after Plaintiff's arrest, Officer Steven Kueber arrived on the scene and asked Plaintiff for permission to search his apartment. (*Id.* ¶ 14.) Plaintiff claims that he declined this request, but the officers nevertheless proceeded to conduct a search of his apartment and remove some of his belongings. (*Id.* ¶¶ 14, 15.) Plaintiff's minor son was present in the apartment and was taken into custody by Officer Shepherd (first name unknown), a community service officer with the Grayslake police. (*Id.* ¶ 16.)

Plaintiff was then taken to the Grayslake Police Department where he was questioned by Officer Myhra. (*Id.* ¶ 17.) Plaintiff alleges that during the interview Officer Myhra screamed at him and threatened that if he did not tell police "what they wanted to know," his son would be placed with the Illinois Department of Children and Family Services. (*Id.*) The following day, while Plaintiff was still in police custody, Officer Kueber, along with Officers E. Carstensen, Kurt Newman, Mario Balarin, and Rita Stang, conducted a second search of Plaintiff's apartment. (*Id.* ¶ 18.) Plaintiff alleges that he never consented to either search of his apartment, and that he was never shown a warrant authorizing the searches of his apartment or his arrest. (*Id.*) After roughly 13 hours at the police station, Plaintiff was released. (*Id.* ¶ 19.)

On April 12, 2013, Plaintiff was arrested again. (*Id.* ¶ 20.) He claim that an arrest warrant had been issued based on the evidence obtained by Officers McNamara and Myhra during the search of his apartment. (*Id.* ¶¶ 20, 21.) Plaintiff claims that the Grayslake police also sent certain evidence to ADA Donohoo in Wisconsin, which she then used to initiate criminal proceedings against him in that state. (*Id.* ¶¶ 22, 50-53.) Plaintiff further claims that while the

thereafter aggressively searched [his] person and pockets and confiscated [his] money." (*Id.* ¶ 12.) Plaintiff claims that Officer Myhra was present and witnessed Officer McNamara's actions but made no attempt to stop him. (*Id.* ¶ 13.)

Shortly after Plaintiff's arrest, Officer Steven Kueber arrived on the scene and asked Plaintiff for permission to search his apartment. (*Id.* ¶ 14.) Plaintiff claims that he declined this request, but the officers nevertheless proceeded to conduct a search of his apartment and remove some of his belongings. (*Id.* ¶¶ 14, 15.) Plaintiff's minor son was present in the apartment and was taken into custody by Officer Shepherd (first name unknown), a community service officer with the Grayslake police. (*Id.* ¶ 16.)

Plaintiff was then taken to the Grayslake Police Department where he was questioned by Officer Myhra. (*Id.* ¶ 17.) Plaintiff alleges that during the interview Officer Myhra screamed at him and threatened that if he did not tell police "what they wanted to know," his son would be placed with the Illinois Department of Children and Family Services. (*Id.*) The following day, while Plaintiff was still in police custody, Officer Kueber, along with Officers E. Carstensen, Kurt Newman, Mario Balarin, and Rita Stang, conducted a second search of Plaintiff's apartment. (*Id.* ¶ 18.) Plaintiff alleges that he never consented to either search of his apartment, and that he was never shown a warrant authorizing the searches of his apartment or his arrest. (*Id.*) After roughly 13 hours at the police station, Plaintiff was released. (*Id.* ¶ 19.)

On April 12, 2013, Plaintiff was arrested again. (*Id.* ¶ 20.) He claim that an arrest warrant had been issued based on the evidence obtained by Officers McNamara and Myhra during the search of his apartment. (*Id.* ¶¶ 20, 21.) Plaintiff claims that the Grayslake police also sent certain evidence to ADA Donohoo in Wisconsin, which she then used to initiate criminal proceedings against him in that state. (*Id.* ¶¶ 22, 50-53.) Plaintiff further claims that while the

Wisconsin criminal proceedings were pending, an order was entered by a judge in the Circuit Court of Lake County, Illinois, requiring the return of Plaintiff's property that had been removed from his apartment by police. (*Id.* ¶¶ 22-23.) Plaintiff alleges that notwithstanding the entry of the order and a request made to Officer Kueber, Defendants have "willfully refused to return [Plaintiff's] property to him[.]" (*Id.* ¶ 23.)

On March 26, 2015, Plaintiff filed this action *pro se*. (R. 1, Compl.) The Court granted his request for the appointment of *pro bono* counsel.[1] (R. 14, Order.) On October 5, 2015, he filed a second amended complaint, through counsel, naming the Village of Grayslake, ADA Donohoo, and Officers Kueber, McNamara, Carstensen, Myra, Newman, Balarin, Stang, and Shepherd as defendants.[2] The second amended complaint contains six separate counts alleging false arrest, unlawful search, malicious prosecution, and conspiracy claims. (R. 20, Sec. Am. Compl. ¶¶ 26-54.) As to ADA Donohoo, Plaintiff alleges that she violated his rights by using "portions of the fruits and documents obtained as a result of [an illegal search]," to "institute criminal charges" against him. (*Id.* ¶¶ 50-51.) Plaintiff claims that ADA Donohoo "knew, or reasonably should have known," that the "fruits of the illegal search" were "obtained in violation of [Plaintiff's] constitutional rights and against established legal principles." (*Id.* ¶ 52.) Based on her actions, Plaintiff seeks an award of monetary damages against ADA Donohoo. (*Id.* ¶ 54.)

On March 10, 2016, ADA Donohoo moved for dismissal under Rules 12(b)(2) and 12(b)(6) asserting lack of personal jurisdiction, or alternatively, prosecutorial and Eleventh Amendment immunity. (R. 29, Mot.; R. 41, Reply.) Plaintiff objects to the request for dismissal,

---

[1] The Court expresses its gratitude to Warren R. Fuller of Kelleher & Buckley, LLC, for serving as appointed counsel in this case.

[2] Plaintiff also lists Officer Shawn Peterson as a defendant, but he is not mentioned in the narrative section of the complaint and it is unclear what role he played in these events. (*See* R. 20, Sec. Am. Compl. ¶¶ 5, 10-24.)

3

arguing that this Court has personal jurisdiction over ADA Donohoo and that she is not immune from suit. (R. 39, Resp.)

## LEGAL STANDARD

In determining whether personal jurisdiction exists, the Court accepts all well-pleaded allegations in the complaint as true, but may also consider outside materials such as affidavits. *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The plaintiff, as the party invoking jurisdiction, bears the burden of establishing that personal jurisdiction exists. *Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). If the Court determines whether it has personal jurisdiction based on written submissions without holding an evidentiary hearing, the plaintiff must establish a *prima facie* case of personal jurisdiction to survive dismissal. *Id.* If the defendant submits declarations or other outside materials challenging personal jurisdiction, the plaintiff has an obligation to submit affirmative evidence supporting the exercise of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003). Although disputes must be resolved in the plaintiff's favor, unrefuted assertions contained in the defendant's affidavit will be accepted as true. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

In deciding a Rule 12(b)(6) motion, the Court can consider the complaint, any attachments thereto, and documents referenced in the complaint that are central to the plaintiff's claims. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). The Court must again accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). Although a complaint does not need to include detailed factual allegations to survive dismissal, it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

4

*Bonnstetter v. City of Chi.*, 811 F.3d 969, 973 (7th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads enough factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

### I. Personal Jurisdiction

ADA Donohoo first argues that this Court lacks personal jurisdiction over her. (R. 29, Mot. at 1.) She argues that even accepting Plaintiff's allegations as true, her "sole contact with Illinois and with [Plaintiff] is that she initiated a criminal action against him in Wisconsin, and in initiating the criminal action, used evidence unlawfully seized in Illinois by Illinois police officers." (R. 41, Reply at 5.) In her view, this type of conduct "does not rise to the level of minimum contacts necessary for the court to exercise personal jurisdiction over [her]." (*Id.*) Plaintiff, by contrast, believes that these limited contacts are sufficient to give this Court personal jurisdiction over ADA Donohoo. (R. 39, Resp. at 3-4, 6.)

Personal jurisdiction refers to the Court's "power to bring a person into its adjudicative process." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (citation omitted). Put simply, jurisdiction to resolve a case on the merits requires "authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). In federal question cases, the Court has personal jurisdiction over a defendant "if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of*

5

*Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). In essence, "federal personal jurisdiction is proper whenever the person would be amenable to suit under the laws of the state in which the federal court sits (typically under a state long-arm statute), subject always to the constitutional due process limitations encapsulated in the familiar 'minimum contacts' test." *KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 723 (7th Cir. 2013).

Because the federal statutes at issue do not contain any provisions for service of process, the Court must look to state law.³ 42 U.S.C. §§ 1983, 1985, 1986; *see also* FED. R. CIV. P. 4(k); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). The Illinois long-arm statute permits the exercise of jurisdiction over a non-resident defendant who transacts business or owns, uses, or possesses real estate in Illinois. 735 ILL. COMP. STAT. 5/2-209(a). The statute also contains a catch-all provision that allows the exercise of personal jurisdiction "on any other basis . . . permitted by the Illinois Constitution and the Constitution of the United States." 735 ILL. COMP. STAT. 5/2-209(c). For purposes of the catch-all provision, "it is enough to evaluate the limits that the Fourteenth Amendment due process places on state exercises of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715-16 (7th Cir. 2002).

---

³ The Court notes that Plaintiff's claim against ADA Donohoo is rather unusually stated. He appears to be alleging a Fourth Amendment violation, which would normally be brought under Section 1983, but instead he brings his claim against ADA Donohoo under 42 U.S.C. § 1986, a little-used statute that creates liability when an individual with knowledge of a conspiracy and the power to prevent it fails to intervene to stop the violation of the plaintiff's rights. *See* 42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [42 U.S.C. §] 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented[.]"). The viability of a claim under Section 1986 turns on whether the plaintiff has a viable conspiracy claim under 42 U.S.C. § 1985(3). *Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985) ("[L]iability under § 1986 is derivative of § 1985(3) liability; without a violation of § 1985(3), there can be no violation of § 1986."). In his complaint Plaintiff asserts a Section 1985(3) conspiracy claim against Officers Kueber, McNamara and Peterson, alleging that they "agreed and conspired to prepare false reports and information relating to [Plaintiff's] arrest, incarceration, search and seizure of his property so as to cover up and create the façade of legitimacy." (R. 20, Sec. Am. Compl. ¶ 43.) The U.S. Court of Appeals for the Seventh Circuit has commented that "[t]he function of § 1985(3) is to permit recovery from a private actor who has conspired with state actors." *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009). Where, as here, all defendants are state actors, "a § 1985(3) claim does not add anything except needless complexity." *Id.* Nevertheless, for purposes of this opinion, the Court will presume without deciding that Plaintiff has stated a viable legal claim against ADA Donohoo under either Section 1983 or Section 1986.

There are two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). General jurisdiction applies to all suits regardless of whether they arise out of the defendant's forum-related activity. *Id.* However, it can be exercised only when the defendant has such "continuous and systematic" contacts with the forum state that he or she can be deemed "essentially at home'" in the forum state. *Id.* (citation omitted). "The threshold for general jurisdiction is high," because "the contacts must be sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). Thus, "isolated or sporadic contacts—such as occasional visits to the forum state" are insufficient to support the exercise of jurisdiction. *Id.* Specific jurisdiction is more limited, and requires a plaintiff to show that the controversy between the parties directly arises out of the defendant's "forum-related activity." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014).

In support of her motion, ADA Donohoo submits an affidavit attesting that she is domiciled in Wisconsin and is employed by the Wisconsin Department of Justice. (R. 34, Donohoo Aff. ¶¶ 1, 4-6.) She attests that she does not transact business in Illinois, nor does she own, use, or possess any real estate in Illinois. (*Id.* ¶ 5.) She attests that on September 24, 2013, a criminal complaint was filed in Walworth County charging Plaintiff with identity theft. (*Id.* ¶ 2.) In June 2014, Plaintiff was extradited from Illinois to Wisconsin. (*Id.* ¶ 4.) He was transported by the Walworth County Sheriff, and ADA Donohoo was not involved in the extradition proceedings. (*Id.*) On July 7, 2014, after Plaintiff's initial appearance, ADA Donohoo filed an information in Walworth County charging Plaintiff with identity theft. (*Id.*) Plaintiff later pled guilty to the charge and was sentenced to 18 months in prison. (*Id.*) He unsuccessfully appealed his conviction to the Wisconsin Court of Appeals. (*Id.*)

Based on these facts, which are uncontradicted by Plaintiff, ADA Donohoo argues that her contacts with Illinois are too limited to support the exercise of personal jurisdiction. (R. 31, Donohoo's Mem. at 6-7.) Plaintiff disagrees, although he does not clearly state whether he believes general or specific jurisdiction applies. (*See* R. 39, Resp. at 3-6.) However, he does not argue—and this Court cannot discern any basis for concluding—that an individual who lives and works in Wisconsin, and who owns no real estate and conducts no business in Illinois, could be deemed "at home" in Illinois. *See Purdue Research*, 338 F.3d at 787 (holding that for general jurisdiction to exist over a nonresident defendant, his or her contacts with the forum state "must be so extensive to be tantamount to [the defendant] being constructively present in the state"). Therefore, the Court proceeds to consider whether Plaintiff can establish specific jurisdiction over ADA Donohoo for purposes of this case.

The exercise of specific jurisdiction over an out-of-state defendant requires that the defendant's contacts with the forum state directly relate to the challenged conduct or transaction. *Felland*, 682 F.3d at 673. Specific jurisdiction is appropriate when the defendant has purposely directed his activities at the forum state and the alleged injury arises out of the defendant's forum-related activities, as long as the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Int'l Shoe Co. vs. Washington*, 326 U.S. 310, 316 (1945). To establish the requisite minimum contacts, "not just any contacts will do: For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Advanced Tactical*, 751 F.3d at 801 (citation and internal quotation marks omitted). Additionally, the defendant's connections to the forum must arise out of contacts that he himself

8

created. *Burger King*, 471 U.S. at 475. "Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement." *Advanced Tactical*, 751 F.3d at 801.

Plaintiff argues that this Court has jurisdiction over ADA Donohoo because she was "a participant in the commission of a tort against [Plaintiff]" and "substantially all actions and acts giving rise to the Plaintiff's cause of action took place or originated in Lake County, Illinois." (R. 39, Resp. at 2, 4.) In support of his argument, Plaintiff relies on *Warmington v. Keeth*, No. 2:07CV92 DAK, 2008 WL 4093612 (D. Utah, Aug. 29, 2008). (R. 39, Resp. at 6-7.) In that case, a Louisiana seller had entered into a contract to sell horses to a Utah buyer. *Id.* at *1. After their agreement went awry, the Louisiana seller acted in his capacity as a Louisiana deputy sheriff to cause felony theft charges and an arrest warrant to be issued against the Utah buyer. *Id.* at *2. The Utah buyer then sued the Louisiana seller in a federal district court in Utah, which held personal jurisdiction over the Louisiana seller was proper. *Id.* at *3-4.

Even if the Court were inclined to follow this unpublished, out-of-District case, the facts of *Warmington* involved far greater contacts with the forum state than exist here. There were multiple phone calls and letters to Utah by the Louisiana seller, and part of the contract was to be performed in Utah. *Id.* In this case, ADA Donohoo is not alleged to have ever stepped foot in Illinois, contracted with Plaintiff here, or had any contact with Plaintiff here. Plaintiff also does not allege, nor can it be plausibly inferred from the complaint, that ADA Donohoo conducted the search of his apartment, directed the actions of the Grayslake police officers, or had any involvement whatsoever in the events occurring in Illinois. Instead, Plaintiff's sole allegation against her is that certain evidence taken from his apartment in Illinois was "sent" to her in Wisconsin, and that she used this evidence to prosecute him for a criminal offense in Wisconsin. (R. 20, Sec. Am. Compl. ¶ 50.) Plaintiff has not cited any case law, nor is this Court aware of

any, holding that a defendant's receipt of an item from another state renders her subject to personal jurisdiction in that state.

Notably, in *Jackson v. City of Harvey*, No. 11-C-5609, 2013 WL 3479512 (N.D. Ill., July 9, 2013), another judge in this District found *Warmington* distinguishable. In that case, an Indiana police officer made an arrest in Indiana of a man who provided a false name. *Id.* at *1. The arrestee was released on bond under the false name and given a date and time to appear for arraignment on the charges. *Id.* However, the arrestee never appeared and a warrant for his arrest was issued. *Id.* Shortly thereafter, the plaintiff, who bore the same name given by the arrestee, was stopped and arrested by police in Harvey, Illinois, for traffic violations. *Id.* The Harvey police officers learned of the outstanding Indiana arrest warrant and detained him. *Id.* The plaintiff brought a false arrest claim against the Harvey police officers and the Indiana officer. *Id.* The court granted the Indiana officer's motion to dismiss for lack of personal jurisdiction, concluding that the plaintiff "simply has not demonstrated that [the officer] purposefully directed his activities at Illinois or otherwise reached out to Illinois in a way that makes him reasonably liable to be sued there." *Id.* at *2 (citation and internal quotation marks omitted).

The same reasoning applies here. ADA Donohoo had only very tangential contact with Illinois, in that she received evidence from police that was obtained here. It cannot reasonably be said that she purposefully directed her activities toward Illinois or that she otherwise "reached out to Illinois" in a manner that made it reasonable for her to expect to be sued here. *Id.* To the extent Plaintiff is arguing that ADA Donohoo is subject to personal jurisdiction in Illinois because he felt the *effects* of her actions here, "[t]his argument mistakes the nature of personal jurisdiction, which is concerned with the actions of individual defendants and not with the effects of conduct generally." *Smith v. Jefferson Cty. Bd. of Educ.*, 378 F. App'x 582, 585 (7th Cir.

2010) (court lacked personal jurisdiction over West Virginia prosecutor who made a call to the Illinois attorney general's office resulting in the plaintiff's arrest in Illinois, because the prosecutor's actions occurred in West Virginia); *see also Advanced Tactical*, 751 F.3d at 801 ("The mere fact that defendant's conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." (citation and internal quotation marks omitted).) For these reasons, Plaintiff has failed to satisfy the minimum contacts requirement.

Even if Plaintiff could satisfy this requirement, the Court still must determine whether it would offend "traditional notions of fair play and substantial justice" to exercise jurisdiction over ADA Donohoo. *Int'l Shoe*, 326 U.S. at 316 (citation omitted). Factors to be considered include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 677.

Exercising personal jurisdiction over ADA Donohoo under the circumstances of this case would "offend traditional notions of fair play and substantial justice." *Int'l Shoe,* 326 U.S. at 316 (citation and internal quote marks omitted). This forum has little interest in adjudicating the dispute between Plaintiff and ADA Donohoo. Although Plaintiff was residing in Illinois at the time of his arrest, he states in his second amended complaint that he is currently residing in Wisconsin. (R. 20, Sec. Am. Compl. ¶ 2.) ADA Donohoo lives and works in Wisconsin, and all of the actions she took underlying Plaintiff's claim against her—*i.e.*, her receipt and use of allegedly tainted evidence—occurred in Wisconsin. The Court also considers the burdens imposed on ADA Donohoo in having to defend this lawsuit in Illinois, when she was simply carrying out her professional duties in Wisconsin. "Potential defendants should have some

control over—and certainly should not be surprised by—the jurisdictional consequences of their actions." *Hyatt*, 302 F.3d at 716. ADA Donohoo could not reasonably have expected that prosecuting Plaintiff for a violation of Wisconsin law in a Wisconsin court would subject her to a lawsuit in Illinois. For these reasons, the Court concludes that it does not have personal jurisdiction over ADA Donohoo.

## II. Prosecutorial Immunity

Assuming *arguendo* that the Court has personal jurisdiction over ADA Donohoo, she also argues that she is protected by absolute prosecutorial immunity. (R. 29, Mot.; R. 41, Reply.) It is well settled that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). This absolute immunity enjoyed by prosecutors is based on the same considerations underlying absolute judicial immunity. *Id.* at 422-23. Such considerations include "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423.

The basis of Plaintiff's claim against ADA Donohoo is that she "utilize[d] the fruits of the illegal search to institute criminal charges" against him. (R. 20, Sec. Am. Compl. ¶ 53.) He seeks monetary damages against her based on her prosecution of these charges. (*Id.* ¶¶ 52-54.) Such a claim falls squarely within the contours of prosecutorial immunity.

Plaintiff argues, without citation, that "the use of [tainted] evidence is more investigative than prosecutorial and thus should not be clothed with absolute immunity." (R. 39, Resp. at 9.) It is true that a prosecutor is not shielded by absolute immunity "when his acts are investigative and

unrelated to the preparation and initiation of judicial proceedings." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir. 2003). As the U.S. Supreme Court has explained:

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (citation and internal quotation marks omitted); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009) ("[A]bsolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation . . . or when a prosecutor acts as a complaining witness in support of a warrant application.").

This principle is inapplicable here. ADA Donohoo is not alleged to have conducted the search of Plaintiff's apartment, directed or advised the Grayslake police, or even been aware that the search was occurring: the sole allegation against her is that she received evidence from the Grayslake police, evaluated this evidence, and decided to use it to prosecute Plaintiff for a criminal offense in Wisconsin. These actions cannot reasonably be deemed "investigative and unrelated to the preparation and initiation of judicial proceedings." *Smith*, 346 F.3d at 742. Instead, it is apparent that her actions were "intimately associated with the judicial phase of the criminal process," and as such they are covered by absolute prosecutorial immunity. *Buckley*, 509 U.S. at 270 (citation omitted). Accordingly, ADA Donohoo must be dismissed as a defendant.[4]

One final matter must be addressed in closing. On May 6, 2016, the Village of Grayslake and its officers separately moved to dismiss several counts of the complaint pursuant to Rule

---

[4] Because ADA Donohoo must be dismissed, the Court does not reach her alternative argument that the Eleventh Amendment bars any claim for damages against her in her official capacity. (R. 31, Donohoo's Mem. at 9-10.)

13

12(b)(6). (R. 38, Mot.) By order of this Court, Plaintiff's response was due June 6, 2016; however, to date no response has been received. (*See* R. 40, Min. Entry.) It is unclear if perhaps the separate orders setting briefing on the two pending motions to dismiss caused confusion among the parties. But in consideration of the fact that Plaintiff's counsel is serving by appointment, the Court will set a new deadline and afford him one final opportunity to respond. If Plaintiff has no objection to the dismissal of these claims, he should file a response by the deadline so indicating. If no response is received by the new deadline, the Court will presume the request for dismissal of these claims is unopposed.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (R. 29, Mot.) is GRANTED, and Diane Donohoo is DISMISSED WITH PREJUDICE. Plaintiff's response to the separate motion to dismiss filed by the Village of Grayslake (R. 38) is due on or before August 26, 2016. The reply, if any, is due on or before September 6, 2016. The parties are directed to appear for a status hearing on October 11, 2016, at 9:45 a.m. and shall be prepared to discuss scheduling of the remainder of this case.

ENTERED: *[signature]*
Chief Judge Rubén Castillo
United States District Court

**Dated: August 16, 2016**

14