UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 15 C 2661 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| VILLAGE OF GRAYSLAKE, et al., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Andre Jackson ("Plaintiff") brings this civil rights action under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 against the Village of Grayslake, Illinois, the Grayslake Police Department, and several of its officers (collectively, "Defendants"), alleging false arrest, unlawful search, unlawful seizure, malicious prosecution, conspiracy, and related claims. (R. 20, Second Am. Compl.) Defendants move to dismiss several of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (R. 38, Mot.) For the reasons stated below, the motion is granted.

## BACKGROUND

Plaintiff alleges that on March 27, 2013, he was "engaged in a conversation with his landlord . . . in the area immediately proximate to his residence" in Grayslake, Illinois. (R. 20, Second Am. Compl. ¶ 11.) He claims that even though he "was not engaged in the performance of a criminal act, nor had he been in performance of a criminal act," he was confronted by Grayslake Police Officers David McNamara and Jeff Myhra. (*Id.* ¶¶ 11-12.) Plaintiff alleges that Officer McNamara had "his gun drawn, pointed at [Plaintiff] and told [him] to raise his hands and then handcuffed [him] and immediately thereafter aggressively searched [his] person and

pockets and confiscated [his] money." (*Id.* ¶ 12.) Plaintiff claims that Officer Myhra was present and witnessed Officer McNamara's actions but made no attempt to stop him. (*Id.* ¶ 13.)

Shortly after Plaintiff's arrest, Officer Steven Kueber arrived on the scene and allegedly asked Plaintiff for permission to search his apartment. (*Id.* ¶ 14.) Plaintiff claims that he declined this request, but the officers nevertheless proceeded to search his apartment and remove "certain of [his] possessions." (*Id.* ¶¶ 14, 15.) Plaintiff's minor son was present in the apartment at the time, and he was taken into custody by Officer Shepherd (first name unknown), a community service officer with the Grayslake police. (*Id.* ¶ 16.)

Plaintiff was then taken to the Grayslake Police Department where he was questioned by Officer Myhra. (*Id.* ¶ 17.) Plaintiff alleges that during the interview Officer Myhra screamed at him and threatened that if he did not tell police "what they wanted to know," his son would be placed with the Illinois Department of Children and Family Services. (*Id.*) The following day, while Plaintiff was still in police custody, Officer Kueber, along with Officers E. Carstensen, Kurt Newman, Mario Balarin, and Rita Stang, allegedly conducted a second search of Plaintiff's apartment. (*Id.* ¶ 18.) Plaintiff claims that he never consented to either search of his apartment, and that he was never shown a warrant authorizing either search. (*Id.*) After roughly 13 hours at the police station, Plaintiff was released. (*Id.* ¶ 19.)

On April 12, 2013, Plaintiff was arrested again, this time pursuant to an arrest warrant. (*Id.* ¶ 20.) He claims that the arrest warrant was issued based on the evidence obtained during the earlier searches of his apartment. (*Id.* ¶¶ 20, 21.) Plaintiff further claims that the Grayslake police officers sent certain evidence to a prosecutor in Wisconsin, who then used this evidence to initiate criminal proceedings against him in that state. (*Id.* ¶¶ 22, 50-53.) He claims that in addition to the Wisconsin case, there was a separate case pending in the Circuit Court of Lake

County, Illinois; he claims that the judge in the Illinois case entered an ordering requiring police to return Plaintiff's property that had been removed from his apartment. (*Id.* ¶¶ 22-23.) Plaintiff alleges that notwithstanding the entry of the order and a direct request made to Officer Kueber, Defendants have "willfully refused to return [Plaintiff's] property to him." (*Id.* ¶ 23.)

On March 26, 2015, Plaintiff filed this action *pro se*. (R. 1, Compl.) The Court subsequently granted his request for the appointment of *pro bono* counsel. (R. 14, Order.) On October 5, 2015, counsel filed a second amended complaint on Plaintiff's behalf alleging false arrest, unlawful search, malicious prosecution, and related claims.[1] (R. 20, Second Am. Compl. ¶¶ 26-54.) Defendants now move to dismiss certain claims. (R. 38, Mot.) Specifically, Defendants seek dismissal of the Village of Grayslake and the Grayslake Police Department, arguing that Plaintiff has failed to allege a claim against them for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*Id.* at 3-4.) Defendants also argue that the malicious prosecution claim contained in Count III should be dismissed in its entirety. (*Id.* at 4-6.)

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). Although a complaint does not need to include detailed factual allegations to survive dismissal, it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bonnstetter v. City of Chi.*, 811 F.3d 969, 973 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 2007)). A complaint must contain sufficient factual matter, accepted as true, to state a claim for

---

[1] In addition to the defendants listed herein, Plaintiff also named the Wisconsin prosecutor as a defendant, but she was dismissed for lack of personal jurisdiction in a prior opinion. *See Jackson v. Vill. of Grayslake*, No. 15 C 2661, 2016 WL 4418231, at *5-6 (N.D. Ill. Aug. 16, 2016).

3

relief that is plausible on its face. *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, the Court is limited to considering the complaint, any attachments thereto, documents referenced in the complaint that are central to the plaintiff's claims, and matters that are subject to judicial notice. *White v. Keely*, 814 F.3d 883, 886 n.2 (7th Cir. 2016); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

## ANALYSIS

Before turning to Defendants' arguments, the Court begins by noting that the second amended complaint is not a model of clarity, and it is difficult to discern from this filing which claims Plaintiff is asserting against which Defendants. For instance, Count I, alleging false arrest and related claims, appears to name only various individual officers, but then at the conclusion of this count Plaintiff seeks an award of damages against the Village of Grayslake and the Grayslake Police Department. (R. 20, Sec. Am. Compl. at 8.) Plaintiff also makes reference to the "Village Defendants" in various counts, without clearly identifying who among the many defendants he is referring to. (*See id.* at 8, 9.) Similarly, within certain counts he refers to "the Defendants named herein" without stating whether he is referring to all Defendants, or only those mentioned within that specific count. For the sake of completeness, the Court has presumed for purposes of the present motion that Plaintiff is attempting to assert each of the five counts of the second amended complaint against all Defendants, including the Village of

---

[2] Plaintiff cites to *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), and cases relying on *Conley* as the applicable standard of review. (R. 44, Resp. at 4.) However, that standard—under which a motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley*, 355 U.S. at 45-46—has been retired by the U.S. Supreme Court and replaced by the plausibility standard. *See Twombly*, 550 U.S. at 563.

4

Grayslake and the Grayslake Police Department. With this clarification, the Court proceeds to Defendants' arguments.

## I.    *Monell* Liability

Defendants first argue that Plaintiff fails to state a claim against the Village of Grayslake and the Grayslake Police Department in any count of the complaint under the standards set forth in *Monell*. (R. 38, Mot. at 3-4.) Under *Monell*, municipal entities cannot be held liable simply because they employ individual police officers who engage in wrongdoing. *See Monell*, 436 U.S. at 691; *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002). Instead, for liability to attach, a plaintiff must allege that the municipality *itself* caused or participated in the deprivation of his or her constitutional rights. *Monell*, 436 U.S. at 694; *see also League of Women Voters of Chi. v. City of Chi.*, 757 F.3d 722, 727 (7th Cir. 2014) (observing that a *Monell* claim is viable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" (quoting *Monell*, 436 U.S. at 694)).

There are three means of establishing liability under *Monell*. A municipality may be held liable "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009) (citation omitted). There is no "bright-line" rule defining what constitutes a "widespread custom or practice," but at a minimum it requires more than one instance of misconduct, and likely more than two or three instances. *Id.* This requirement is meant to ensure "that there is a policy at issue rather than a random event." *Id.* In addition, for a municipality to be held liable for an unlawful custom or

5

practice, the plaintiff must show that municipal policymakers "were deliberately indifferent as to the known or obvious consequences" of that custom or practice. *Id.* (citation and internal alteration omitted). In other words, municipal officials "must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff." *Id.* A plaintiff must also allege causation—specifically, that the official policy, action, or custom was the "moving force" behind the violation of his constitutional rights. *Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007) (citation omitted). There is no heightened pleading standard for *Monell* claims, *id.*, but simply making legal conclusions or conclusory allegations is insufficient. *Iqbal*, 556 U.S. at 679.

Defendants argue that Plaintiff has not adequately alleged the existence of an official policy, an action by an official with final policy-making authority, or a widespread municipal practice or custom that caused his injury so as to trigger *Monell* liability. (R. 38, Mot. at 4.) In response, Plaintiff argues that Defendants have "ignore[d] the collective quantum of the acts of the Officers." (R. 44, Resp. at 5.) He recounts the various allegations of wrongdoing by the individual officers, which by his count amounts to 11 separate violations of his Fourth Amendment rights. (*Id.* at 7.) He argues, without citation to authority, that "[i]t is a reasonable inference from these factual allegations . . . that these violations were pursuant to an established policy of the Village and its Police Department." (*Id.*)

Even affording Plaintiff all favorable inferences, he has failed to allege a plausible *Monell* claim against these municipal entities. Plaintiff does not identify any unconstitutional policy that was formally adopted by these municipalities, nor does he identify an action or decision by an official with final policy-making authority that caused his injury. He appears to be proceeding under the "widespread practice" approach, but he does not describe any instances of

misconduct by the officers other than in connection with his own arrest. A series of events involving one individual does not establish a "widespread" practice or custom. *See Connick v. Thompson*, 563 U.S. 51, 61-64 (2011) (observing that for municipal liability to attach under *Monell*, the municipality's unconstitutional practices must be "so persistent and widespread as to practically have the force of law" and rejecting the plaintiff's argument that "'obviousness' can substitute for the pattern of violations"); *Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003) (observing that "proof of isolated acts of misconduct will not suffice" to establish liability under *Monell*); *Gable*, 296 F.3d at 538 (three instances of unconstitutional conduct involving different individuals did not amount to a "persistent and widespread practice").

Plaintiff also does not allege, nor do the circumstances plausibly suggest, that municipal policymakers were aware of and turned a blind eye to the likely consequences of an unconstitutional practice or custom. *See Gable*, 296 F.3d at 538 ("[T]hree incidents were too few to indicate that the City had a widespread custom of which City policymakers had reason to be aware."). Plaintiff also has not clearly alleged that it was a custom, rather than the actions of a few rogue officers, that caused his injury. Because Plaintiff has not provided any allegations to plausibly suggest that his injury was caused by a municipal practice or custom, he has failed to state a claim under *Monell*. Accordingly, the Village of Grayslake and Grayslake Police Department are dismissed as defendants.[3]

---

[3] The Court notes that it is unclear whether the Grayslake Police Department is a suable entity for purposes of Federal Rule of Civil Procedure 17, or whether it is "merely an instrumentality of the Village" with "no independent legal existence apart from the Village." *Thiel v. Libertyville Police Dep't*, No. 94 C 2505, 1994 WL 673069, at *2 (N.D. Ill. Nov. 28, 1994); *see also Yachnin v. Vill. of Libertyville*, 803 F. Supp. 2d 844, 847 (N.D. Ill. 2011) (municipal police department in Illinois was a "non-suable entity" and not a proper defendant in Section 1983 suit); *Gray v. City of Chi.*, 159 F. Supp. 2d 1086, 1089 (N.D. Ill. 2001) (dismissing claims against Chicago Police Department because it is "not a suable entity" and "does not have a separate legal existence" from the City of Chicago). Because Plaintiff fails to state a claim against the Grayslake Police Department, the Court need not resolve this issue.

## II. Malicious Prosecution

Defendants next argue that Plaintiff's malicious prosecution claim asserted in Count III should be dismissed in its entirety. (R. 38, Mot. at 4-6.) Given the Court's dismissal of the Village of Grayslake and the Grayslake Police Department as defendants, what remains of Count III at this point is Plaintiff's claim against the individual police officers. Defendants argue that Plaintiff's allegations do not state a claim for malicious prosecution, because Plaintiff does not describe any wrongdoing by the officers in connection with the criminal proceeding itself. (*Id.*)

As the complaint was drafted, it is not entirely clear whether Count III is premised on state law, federal law, or perhaps both. (*See* R. 20, Sec. Am. Compl. ¶¶ 36-41; *see also* R. 44, Resp. at 5.) However, under the law of this Circuit, Plaintiff is barred from asserting a federal constitutional claim for malicious prosecution "because Illinois tort law provides an adequate remedy." *Cairel v. Alderden*, 821 F.3d 823, 831 (7th Cir. 2016); *see also Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013) ("[A] federal claim for malicious prosecution is actionable only if the state fails to provide an adequate alternative[.]"); *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) ("[W]e have recognized that *Albright* [*v. Oliver*, 510 U.S. 266 (1994)] scotches any constitutional tort of malicious prosecution when state courts are open.").

Thus, Plaintiff's only viable option is a state law claim for malicious prosecution. To state a claim for malicious prosecution under Illinois law, a plaintiff must allege five separate elements: "(1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Cairel*, 821 F.3d at 834 (citing *Sang Ken Kim v. City of Chi.*, 858 N.E.2d 569, 574 (Ill. App. Ct. 2006)). "The failure to establish any one of these elements precludes recovery for malicious prosecution." *Sang Ken Kim*, 858 N.E.2d at 574.

"Probable cause" in this context means "facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Id.* (citation omitted). "It is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused." *Id.* Additionally, "[p]robable cause is determined as of the time the prosecutor signs the criminal complaint." *Mack v. First Sec. Bank of Chi.*, 511 N.E.2d 714, 717 (Ill. App. Ct. 1987). When the defendants in a malicious prosecution claim are police officers rather than prosecutors, "the question is whether the defendants themselves had probable cause to believe the offense had been committed at the time they initiated the criminal proceeding." *La Playita Cicero, Inc. v. Town of Cicero*, --- F. Supp. 3d ----, 2016 WL 1247406, at *10 (N.D. Ill. Mar. 30, 2016) (citing *Gauger v. Hendle*, 954 N.E.2d 307, 329 (Ill. App. Ct. 2011).) "Malice" means that "the officer who initiated the prosecution had any motive other than that of bringing a guilty party to justice." *Williams v. City of Chi.*, 733 F.3d 749, 759-60 (7th Cir. 2013) (interpreting Illinois law) (citation and internal quotation marks omitted); *see also Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 842 (Ill. App. Ct. 2000) ("Malice, as an element of malicious prosecution, is proved by showing that the [defendant] was actuated by improper motives.").

There is some confusion about whether Plaintiff is basing his malicious prosecution claim on the Wisconsin court proceeding or the Lake County court proceeding, both of which are mentioned in the complaint, but affording him all reasonable inferences, he has alleged that criminal charges were initiated against him and that these charges were ultimately resolved in his favor.[4] (*See* R. 20, Sec. Am. Compl. ¶¶ 21-22, 37.) He also alleges that he suffered damages as a

---

[4] Plaintiff does not elaborate on the nature of the items taken from his apartment or the criminal offense with which he was charged, but filings in an earlier motion to dismiss suggested that the offense was related to identity theft. *See Jackson*, 2016 WL 4418231, at *4.

9

result. (*Id.* ¶ 41.) However, even accepting his allegations as true and construing the complaint in his favor, he has not included any allegations that would satisfy the other two elements.

On the probable cause element, Plaintiff alleges as follows: "There was a lack of probable cause to initiate criminal proceedings because, at the time of [Plaintiff] being taken into custody and at the time of the search of his premises, there was no probable cause, arrest warrant or search warrant issued against him." (*Id.* ¶ 38.) This assertion is circular and ignores the relevant inquiry. The question for purposes of the malicious prosecution claim is not what the officers knew at the time they arrested Plaintiff, but what they knew at the time the charges were initiated. *Gauger*, 954 N.E.2d at 329; *see also Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998) ("Malicious prosecution and false arrest are separate claims, even though plaintiffs have attempted to blur the line between them."). It is readily apparent from the complaint that the charges were brought against Plaintiff based on evidence the police obtained during the searches of his apartment *after* he was first arrested. (R. 20, Sec. Am. Compl. ¶¶ 15-22.) Plaintiff claims that this evidence was gathered in violation of his Fourth Amendment rights, which could give rise to a claim for unlawful search. But he does not allege that the police fabricated the evidence, committed perjury in connection with the criminal charges, or otherwise failed to entertain an honest belief that he had committed a criminal offense. In other words, he has not included any allegations that would suggest that the prosecution itself was lacking a proper basis.

Similarly, on the malice element, Plaintiff asserts that the officers engaged in misconduct during the course of their investigation—including detaining him too long at the police station and yelling at him during their interview—but there is nothing in the complaint to suggest that they were motivated by anything other than a desire to bring a "guilty party to justice." *Williams*, 733 F.3d at 760. Plaintiff asserts in formulaic terms that "Officer McNamara acted with malice

10

toward [him]," but he does not address the other officers, nor does he offer any details about why he believes Officer McNamara acted maliciously so that the Court could assess whether his allegation is plausible. (R. 20, Sec. Am. Compl. ¶ 39.) Threadbare assertions and formulaic recitations of the elements of a cause of action are insufficient under federal pleading standards. *Bonnstetter*, 811 F.3d at 973.

Under these circumstances, Plaintiff has failed to plead a plausible malicious prosecution claim. *See Sneed*, 146 F.3d at 481-82 (7th Cir. 1998) (malicious prosecution claim failed where the plaintiff alleged only that he was arrested without probable cause, not that the police gave perjured testimony, falsified evidence, withheld exculpatory evidence, or committed some other type of wrongdoing in connection with the prosecution); *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996) (concluding that the plaintiff could not "shoehorn a wrongful arrest claim into a malicious prosecution claim," where the crux of his complaint was that he was arrested without probable cause). Accordingly, Count III is dismissed.

Finally, Plaintiff has not requested leave to amend his complaint, submitted a proposed amended pleading, or suggested how he could replead his claims (consistent with what he has already alleged) to state a viable *Monell* or malicious prosecution claim. This case has been pending for nearly 18 months, and Plaintiff has already amended his complaint twice. (*See* R. 1, 11, 20.) Under these circumstances, the dismissal of these claims will be with prejudice. *See Leavell v. Ill. Dep't Nat. Res.*, 600 F.3d 798, 807-08 (7th Cir. 2010); *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006).

## CONCLUSION

For the foregoing reasons, the motion to dismiss (R. 38) is GRANTED. The Village of Grayslake and the Grayslake Police Department are DISMISSED WITH PREJUDICE, and Count III is DISMISSED WITH PREJUDICE. The parties are requested to reevaluate their final settlement positions for the claims remaining in this lawsuit prior to the next status hearing on October 11, 2016.

ENTERED: _____
Chief Judge Rubén Castillo
United States District Court

**Dated: September 9, 2016**